UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

TABITHA LULO,

                                        Plaintiff,

                    -v-

OTG MANAGEMENT, LLC,

                                        Defendant.

---

19 Civ. 3776 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

Plaintiff Tabitha Lulo ("Lulo"), was employed by defendant OTG Management, LLC

("OTG") from March 2015 to November 2017.  In 2017, Lulo was pregnant and, after giving

birth, took Federal Medical Leave Act ("FMLA") leave.  Approximately one month after

returning to work, she was terminated from OTG in a company-wide Reduction-in-Force

("RIF").  Lulo brings retaliation and discrimination claims against OTG under the FMLA, 29

U.S.C. § 2601 *et seq.*, New York State Human Rights Law, N.Y. Exec. Law, § 290 *et seq.*

("NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code, § 8–101 *et seq.*

("NYCHRL").

Pending now is OTG's motion for summary judgment.  For the reasons that follow, the

Court grants the motion.

# I.    Background

## A.    Factual Background[1]

### 1.    The Parties[2]

Lulo is a former employee of OTG.  Def. 56.1 ¶ 1; Depol Decl. ¶ 3.  As of the filing of

her opposition to summary judgment, Lulo was a 37-year-old woman, residing in Rockland

County, New York.  Pl. 56.1 ¶ 48.

OTG is a limited liability company organized under Delaware law.  Def. 56.1 ¶ 3.  OTG

is owned by three separate entities, one of which is OTG Management, Inc.  Depol Decl. ¶ 3.

OTG owns and operates restaurants and concessions in airport terminals throughout the United

---

[1] The Court draws its account of the facts of this case from the parties' submissions in support of
and in opposition to defendant's motion for summary judgment, including: OTG's Local Rule
56.1 statement, Dkt. 41 ("Def. 56.1"); the declaration of Michael C. Schmidt in support of the
motion, Dkt. 44 ("Schmidt Decl."), and attached exhibits; the declaration of James Depol in
support of the motion, Dkt. 42 ("Depol Decl."); Lulo's Local Rule 56.1 counter-statement, Dkt.
53 ("Pl. 56.1"); the declaration of Jimmy M. Santos, Esq., in opposition to the motion, Dkt. 76
("Santos Decl."), and attached exhibits; and OTG's reply to Lulo's 56.1 counter-statement, Dkt.
55 ("Def. Reply 56.1").

Citations to a party's Rule 56.1 statement incorporate by reference the documents cited therein.
Where facts stated in a party's Rule 56.1 statement are supported by testimonial or documentary
evidence, and are denied by a conclusory statement by the other party without citation to
conflicting testimonial or documentary evidence, the Court finds such facts true.  *See* S.D.N.Y.
Local Rule 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the
statement required to be served by the moving party will be deemed to be admitted for purposes
of the motion unless specifically controverted by a correspondingly numbered paragraph in the
statement required to be served by the opposing party."); *id.* at 56.1(d) ("Each statement by the
movant or opponent . . . controverting any statement of material fact[] must be followed by
citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c).").

[2] On June 11, 2021, OTG Management, Inc., the original named defendant, filed a motion for
summary judgment.  Dkt. 43.  That motion raised, for the first time in this litigation, that OTG
Management, LLC, not OTG Management, Inc., was Lulo's employer.  *See id.*; *see also* Depol
Decl. (stating same).  In its earlier answer to plaintiff's complaint, OTG Management, Inc. had
admitted it had employed Lulo.  *See* Dkt. 11 ¶ 6.  On January 7, 2022, pursuant to the Court's
order, Dkt. 57, Lulo filed an amended complaint substituting OTG Management, LLC as the
defendant, Dkt. 58.  The Court therefore considers OTG Management, LLC to be Lulo's
employer, and resolves OTG's motion on the merits.  *See* Fed. R. Civ. P. 15(c)(1)(C).

States, including in airports in New York (LaGuardia and JFK) and New Jersey (Newark). It
maintains a corporate office in New York City. Def. 56.1 ¶ 4.

### 2.    Lulo's Employment By OTG

Lulo was employed by OTG from on or about March 16, 2015 through on or about
November 13, 2017. *Id.* ¶ 6. Lulo was a "senior cash auditor," and was the only person
employed in that position during her employment. *Id.* ¶ 7. Lulo's starting annual salary was
$68,000. Pl. 56.1 ¶ 51. Lulo reported directly to Tom Iacopelli ("Iacopelli"), who was OTG's
Senior Vice President of Finance. Def. 56.1 ¶ 8. Lulo did not have a physical office; she
traveled to airport terminals to perform her duties. *Id.* ¶ 9. Lulo was primarily responsible for
auditing cash and cash-related transactions at OTG's airport terminals. *Id.* ¶ 10.

### 3.    Lulo's Pregnancy and Maternity Leave

In or about January 2017, Lulo learned she was pregnant. *Id.* ¶ 11. In February 2017,
Lulo told Iacopelli that she was pregnant. *Id.* ¶ 12. Iacopelli did not express any negative
reaction, and congratulated Lulo on her pregnancy. *Id.*; Schmidt Decl., Ex. A at 19. No one at
OTG ever made any derogatory or inappropriate comment to Lulo about her pregnancy. Def.
56.1 ¶ 13.

Lulo did not have any difficulties performing her job duties during her pregnancy. *Id.* ¶
14. Approximately one to two weeks before she gave birth, Lulo announced to Iacopelli that she
would be taking maternity leave after delivery. *Id.* ¶¶ 15, 16. Iacopelli did not indicate to Lulo
that he took issue with her taking such leave. *Id.* ¶ 17. No one at OTG ever made a derogatory
comment about, or indicated any issue with, Lulo taking maternity leave. *Id.* ¶ 18. On July 5,
2017, Lulo delivered her baby. *Id.* ¶ 19.

On July 6, 2017, Lulo submitted her maternity leave request form, with an approved
anticipated return-to-work date of September 28, 2017. *Id.* ¶ 20. However, Lulo began to suffer

from postpartum depression, and was unable to return to work on that date. *Id.* ¶ 21. Lulo therefore told Iacopelli that her doctor had extended her leave for a few additional weeks, and that she would return to work on October 23, 2017. *Id.* ¶ 22. Iacopelli never indicated that he had any issue with Lulo extending her maternity leave. *Id.* ¶ 23; Schmidt Decl., Ex. A at 45. No one at OTG ever made any derogatory comment about, or indicated any problem with, Lulo's extended leave. Def. 56.1 ¶ 24. Lulo's maternity leave extension request was approved. *Id.* ¶ 25.

On October 23, 2017, Lulo returned to work in the same role as before her leave began. *Id.* ¶ 26. After her return, no one at OTG made any comments to Lulo regarding her maternity leave or her gender. *Id.* ¶¶ 27–29. At no time during her employment did Lulo complain to Human Resources. *Id.* ¶ 30.

### 4.    OTG's Company-Wide RIF

In November 2017, OTG began a company-wide RIF, *i.e.*, layoffs. *Id.* ¶ 31. The RIF impacted all lines of OTG's business and departments. *Id.* ¶ 32. OTG's then-Chief Financial Officer had advised OTG to reduce staff for budgetary purposes. *Id.* ¶ 33. Each department assessed the positions within it to determine which could be eliminated without causing significant disruptions to OTG's core workflow and efficiencies. *Id.* ¶ 34. As part of the RIF, OTG determined that Lulo's position as a senior cash auditor was not necessary and that it, among other positions, should be eliminated. *Id.* ¶ 35. This was in part because, by then, OTG had moved further away from a cash-based business model and relied more on credit and debit card transactions. *Id.* ¶ 36. At her termination meeting, Lulo was told that she was being let go for budgetary reasons as part of a RIF. *Id.* ¶ 41. Although OTG did not provide a precise number of individuals terminated in the RIF, its Senior Vice President, Corporate Controller

described the November 2017 RIF as "major," in which "every department had to . . . let people go." Schmidt Decl., Ex. B at 10.

Lulo disputes that the budget cuts were the reason for her termination. She claims she was terminated because she had been pregnant and had taken FMLA leave. Pl. 56.1 ¶ 47. Lulo notes that OTG, the previous year, had terminated another employee, Carla Rodriguez ("Rodriguez"), after she had been pregnant and taken FMLA leave. *Id.* ¶¶ 55; 68–69. However, OTG disputes that pregnancy or FMLA leave were reasons for Rodriguez's termination. It states that Rodriguez had been terminated as part of a smaller RIF, under which it had terminated *all* persons—including Rodriguez—who had been hired for the specific purpose of supporting the company during its take-public effort. Def. 56.1 Reply ¶ 55. In further support of her claim that the RIF was pretextual, Lulo also notes that she had heard "not a whisper" about an impending RIF before her termination. Pl. 56.1 ¶ 77.

OTG asserts—and Lulo does not dispute—that Lulo was not the only OTG employee terminated during the RIF, and that the RIF entailed the termination of male and female employees. Def. 56.1 ¶¶ 37–38. As of Lulo's return to work, Lulo did not have any additional leaves of absence scheduled. *Id.* ¶ 40.

Lulo claims—but adduces no evidence, aside from her own deposition testimony—that she applied for and was rejected from "her own job repackaged by OTG" after her termination. Pl. 56.1 ¶ 85. Lulo has not, however, provided evidence as to when she applied, the title of the ostensibly repackaged position, a description of that position, and the qualifications and credentials the position required. On the other hand, OTG adduces evidence that at no time after Lulo's termination did it hire anyone into the position of senior cash auditor, or the same or a similar role repackaged under another title. Def. 56.1 ¶ 43. After the 2017 RIF, certain of the

cash-auditing functions were assumed by multiple people, but no person solely performed a cash auditing role in the terminals, and cash audits were no longer done at the terminals with the same frequency or to the same extent or degree as before the 2017 RIF. *Id.* ¶ 44. A person named Richard Mazer ("Mazer") was later hired not to perform solely cash auditing functions in airport terminals, but as a high-level auditor for the whole company. Def. 56.1 Reply ¶ 63. Mazer's role was a CPA-level position. Mazer is a CPA; Lulo is not. *Id.*

### 5.    Lulo's Subsequent Employment

In February 2018, less than three months after her termination, Lulo began working as a commission specialist at another company. Def. 56.1 ¶ 45.

Lulo was unable to get treatment for her postpartum depression after being terminated from OTG because she lost her health insurance. Pl. 56.1 ¶ 59. Lulo suffered severe psychological distress and damage, which she alleges was directly and proximately caused by OTG. For purposes of this motion, OTG does not dispute her claim of such injury. *Id.* ¶ 60.

### B.    Procedural History

On April 26, 2019, Lulo filed her complaint. Dkt. 1 ("Compl."). On June 18, 2019, OTG filed an answer. Dkt. 11. On June 11, 2021, OTG filed a motion for summary judgment, a Rule 56.1 Statement, with declarations and a memorandum of law in support. Dkts. 40–44. On July 19, 2021, Lulo filed her opposition to the motion, a Rule 56.1 statement, and a declaration in support. Dkts. 51–53. On July 30, 2021, OTG filed its reply, a reply Rule 56.1 statement, and an affidavit in support. Dkts. 54–56.

## II.    Legal Standards Governing Motions for Summary Judgment

To prevail on a motion for summary judgment, the movant must "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

6

The movant bears the burden of demonstrating the absence of a question of material fact. In making this determination, the Court must view all facts "in the light most favorable" to the non-moving party. *Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008).

If the movant meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008). "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted). Rather, to survive a summary judgment motion, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).

"Only disputes over facts that might affect the outcome of the suit under the governing law" will preclude a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether there are genuine issues of material fact, a court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)).

In cases that involve claims of discrimination or retaliation, courts must use "an extra measure of caution" in determining whether to grant summary judgment "because direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions." *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 603 (2d Cir. 2006) (citation omitted). However, "the salutary purposes of summary judgment—avoiding protracted, expensive and harassing trials—apply no less to

7

discrimination cases." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) (citation omitted). Thus, even in the context of a discrimination case, "a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment," *Holcomb*, 521 F.3d at 137; *see also Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 101 (2d Cir. 2010), and courts may grant summary judgment against "discrimination claims in cases lacking genuine issues of material fact," *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 69 (2d Cir. 2001) (citation omitted).

## III.   Discussion

Lulo brings claims of retaliation under the FMLA, and retaliation and discrimination under the NYSHRL and the NYCHRL.  The Court first addresses the FMLA claims and then those under state and city law.

### A.   Retaliation Claims Under the FMLA

OTG moves for summary judgment on Lulo's claims that the decisions to terminate her, and later not to rehire her, were made in retaliation for having taken FMLA leave.

#### 1.   Legal Standards

The FMLA gives eligible employees an "entitlement" to 12 work weeks of unpaid leave per year.  29 U.S.C. § 2612(a)(1).  While an employee is on FMLA leave, it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" by the FMLA.  *Id.*  FMLA leave is triggered by, *inter alia*, "the birth of a son or daughter and in order to care for such son or daughter" and "a serious health condition that makes the employee unable to perform functions of his or her position."  *Id.* §§ 2612(a)(1)(A), (D).  At the end of a FMLA leave, the employee has the right to be restored to the position, or its equivalent, that he or she held before taking leave.  *Id.* § 2614(a)(1).  A plaintiff may bring FMLA retaliation claims for a violation of § 2615(a)(1).  *See Woods v. START Treatment & Recovery Ctrs., Inc.*, 864 F.3d 158, 167 (2d Cir. 2017); *see also* 29 U.S.C. § 2615(a)(1) ("It shall

be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA].").

FMLA retaliation claims are analyzed under the familiar *McDonnell Douglas* burden-shifting framework developed under Title VII. *Roberts v. Health Ass'n*, 308 F. App'x 568, 570 (2d Cir. 2009) (summary order) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). To make out a *prima facie* case, Lulo must establish that: (1) she exercised rights protected under the FMLA; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent. *Potenza v. City of New York*, 365 F.3d 165, 168 (2d Cir. 2004); *Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 429 (2d Cir. 2016). As to the fourth element, retaliatory intent can be established: "(1) indirectly through a showing that the protected activity was followed closely by discriminatory treatment, commonly known as 'temporal proximity;' (2) indirectly through other evidence such as disparate treatment of similarly-situated employees; or (3) directly through a showing of evidence of retaliatory animus toward plaintiff by defendant." *Alexander v. Bd. Of Educ. of City School Dist. of City of New York*, 107 F. Supp. 3d 323, 328–29 (S.D.N.Y. 2015), *aff'd sub nom. Alexander v. The Bd. of Educ. of City of New York*, 648 F. App'x 118 (2d Cir. 2016) (summary order); *see also Carr v. WestLB Admin., Inc.*, 171 F. Supp. 2d 302, 309 (S.D.N.Y. 2001).

Once a plaintiff makes out a *prima facie* case of retaliation, the burden of production shifts to the defendant to articulate a legitimate, non-retaliatory reason for its action. *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 552–53 (2d Cir. 2010); *Hicks*, 593 F.3d at 164. If the defendant meets this burden, the plaintiff, to avoid summary judgment, must identify evidence sufficient to

support an inference that the proffered reason is a mere pretext for retaliation. *See Kaytor*, 609 F.3d at 552–53; *Hicks*, 593 F.3d at 164.

### 2. Application to Lulo's Claim of Retaliatory Termination

The parties do not dispute the first three elements of Lulo's *prima facie* case. They diverge only as to the fourth element: whether there is evidence to support that the adverse employment action at issue—Lulo's termination—took place under circumstances giving rise to an inference of retaliatory intent.

#### a. Prima facie *case*

Lulo first requested leave on July 6, 2017; she later requested additional leave due to her postpartum depression diagnosis. Def. 56.1 ¶¶ 20, 21. After she returned to work on October 23, 2017, she was terminated on or about November 13, 2017. *Id.* ¶ 6. Lulo's termination followed her return to work by one month. The proximity of these events is close enough to supply an inference of retaliation and thereby the remaining element of a *prima facie* case. *De Figueroa v. New York*, 403 F. Supp. 3d 133, 157 (E.D.N.Y. 2019) ("[T]here is no firm outer limit to the temporal proximity required, but most courts in the Second Circuit have held that a lapse of time beyond two or three months will break the causal inference."); *see also Walder v. White Plains Bd. of Educ.*, 738 F. Supp. 2d 483, 503–04 (S.D.N.Y. 2010) (collecting cases).

In support of her *prima facie* case, Lulo points to one other piece of ostensible evidence of OTG's intent to retaliate against her for taking FMLA leave: the fact that another employee, Rodriguez, had been terminated during an earlier RIF after becoming pregnant and taking FMLA leave. That sparsely developed circumstance, however, is insufficient to permit an inference that the separate RIF process a year later during which Lulo's position was eliminated was skewed by bias against FMLA-leave takers. *See Vuona v. Merrill Lynch & Co.*, 919 F. Supp. 2d 359, 372 (S.D.N.Y. 2013). Indeed, Lulo does not adduce evidence that would make out a *prima facie* case

that Rodriguez's termination was discriminatory.  That is in part because she does not present evidence that Rodriguez was terminated in close enough proximity to her pregnancy or FMLA leave to give rise to an inference of retaliatory intent.  Instead, Lulu makes only the vague statement that "Ms. Rodriguez had been a pregnant woman who had taken FMLA leave right before she was terminated."  Pl. 56.1 ¶ 69.  And Lulo does not point to any other evidence on which to infer that Rodriguez's termination was retaliatory.  *See Delaney v. Bank of Am. Corp.*, 908 F. Supp. 2d 498, 505 (S.D.N.Y. 2012), *aff'd*, 766 F.3d 163 (2d Cir. 2014) (fact of termination of other members of plaintiff's protected class did not support discrimination claim where plaintiff did not adduce evidence as to the circumstances of the terminations, including whether others were terminated at the same time; whether other employees were replaced by persons without the protected characteristic; or what the employer's stated justification was for terminating them).

Lulo thus has adduced sufficient evidence to establish a *prima facie* case of retaliation, but solely based on the temporal proximity of her termination relative to her FMLA leave.

> b.    *OTG's legitimate, non-discriminatory reasons for termination*

OTG has adduced evidence of a legitimate, non-discriminatory reason for Lulo's termination.  Lulo, it documents, was let go as part of a "major" RIF, imposed due to budgetary constraints.  Def. 56.1 ¶¶ 31–36.  "A RIF can indeed provide a legitimate, non-discriminatory reason for a termination."  *Vuona*, 919 F. Supp. 2d at 373 (collecting cases); *Delaney*, 908 F. Supp. 2d at 508 (inclusion in RIF for objective reason evidence of legitimate, nondiscriminatory reason).

OTG has further demonstrated that Lulo was included in the RIF based on objective criteria.  The RIF candidates were selected based on *positions* OTG could afford to eliminate without disrupting its workstream, not on subjective evaluations of the persons occupying the

positions at issue.  Def. 56.1 ¶¶ 34–36.  OTG's explanation that its objective RIF criteria drove

the termination decisions is corroborated by the fact that OTG did not thereafter hire anyone else

for the senior cash auditing role after terminating Lulo.  *Id.* ¶¶ 43–44.  Instead, Lulo's

responsibilities were subsumed into existing roles.  *Id.*  Thus, Lulo's *prima facie* case of

retaliation, based on temporal proximity, has been countered by OTG's evidence of a legitimate,

non-discriminatory reason (the RIF) for terminating her.

c.      *Lulo's evidence of pretext*

Although temporal proximity can support a causal connection at the *prima facie* stage, it

is "insufficient to defeat summary judgment at the pretext stage."  *Zann Kwan v. Andalex Grp.*

*LLC*, 737 F.3d 834, 847 (2d Cir. 2013); *see also Cooper v. New York State Nurses Ass'n*, 847 F.

Supp. 2d 437, 449 (E.D.N.Y. 2012).  Instead, Lulo must present some additional evidence that

retaliation was the cause of her termination.  *Davies v. New York City Dep't of Educ.*, 563 F.

App'x 818, 820–21 (2d Cir. 2014) (summary order) ("We have been clear that temporal

proximity between protected activity and an adverse employment action, alone, is insufficient to

establish pretext[.]") (citations omitted).

In response to OTG's evidence of a legitimate reason for terminating her, Lulo has not

come forward with any plausible evidence suggesting that her inclusion in an RIF based on

objective criteria was a sham.  She offers only two facts ostensibly so indicating.

First, she asserts that she personally had not heard about the RIF before it occurred.  But,

without more, the lack of earlier notice to her of the RIF is not at all probative as to whether her

inclusion in the RIF was pretextual.

Second, she again cites the termination a year earlier of Rodriguez, who had been on on

FMLA leave before her termination, as evidence of a workplace culture in which RIFs were used

to eliminate employees who had taken such leave.  But, as noted, Lulo has not adduced evidence

12

sufficient to support even an inference based on temporal proximity that Rodriguez's termination

was retaliatory. And even were there a factual basis for such an inference, OTG has adduced

unrebutted evidence that Rodriguez's termination, too, was part of a broader RIF and consistent

with its objective criteria. Specifically, OTG substantiates, Rodriguez was hired to assist in

OTG's take-public effort. Once that effort had been abandoned, her position was terminated,

along with all others that had been created as part of OTG's take-public effort. Def. Reply 56.1 ¶

55.

      Lulo thus has not come forward with any evidence of pretext. "Mere temporal proximity,

standing alone, is insufficient to carry plaintiff's burden at the pretext analysis." *Pellegrino v.

County of Orange*, 313 F. Supp. 2d 303, 316 (S.D.N.Y. 2004) (alterations omitted) (quoting

*Brown v. The Pension Boards*, 488 F. Supp. 2d 395, 410 (S.D.N.Y. 2007)). Accordingly, there is

insufficient evidence to permit her claim of retaliation based on having taken FMLA leave to

reach a jury. Summary judgment is merited for OTG on that claim.

### 3.    Application to Lulo's Claim of a Retaliatory Failure to Rehire

      Lulo separately claims that OTG's failure thereafter to rehire her was also retaliatory,

based on her earlier exercise of FMLA rights. Such a theory can be the basis of a meritorious

FMLA retaliation claim. *See Yetman v. Capital Dist. Transp. Auth.*, 669 F. App'x 594, 595 (2d

Cir. 2016) (summary order). But Lulo has not adduced evidence to support this claim. As

reviewed above, there is no evidence that her termination during the RIF was motivated by

retaliatory animus. And Lulo has not identified competent evidence of such intent bearing on

OTG's failure thereafter to rehire her.

      In pursuing this claim, Lulo posits that "[n]ot long after [she] was terminated, OTG

sought to hire someone for a same or similar position [she] had at OTG—for which she applied."

Dkt. 51 at 9. In support, she cites only her own deposition testimony to this effect. She has not

13

adduced any concrete information about this position or application—including when she applied for the new position, the title of that position, the responsibilities of that position, the experience of credentials required of the person to hold that position, or the amount the position would pay.

OTG, for its part, has adduced competent evidence to demonstrate that Lulo's entire role was eliminated and not replaced by a similar post. This proof supports that, after Lulo was terminated, OTG hired Mazer to a CPA-level position to perform high-level internal company-wide audits. Schmidt Decl., Ex. B at 20; *id.*, Ex. C at 26–27. Lulo is not a CPA. Def. Reply 56.1 ¶ 57. Unlike Lulo, Mazer did not report to Iacopelli or Depol, but instead reported directly to the company's legal department. Schmidt Decl., Ex. B at 18; *id.* Ex. C at 32. And unlike Lulo, Mazer did not travel to airport terminals to perform cash audits. *Id.*, Ex. B at 20. Certain cash auditing functions were assumed by other individuals at OTG, but no one was hired in a senior cash auditor role or in any other role with the same or similar responsibilities as Lulo. Def. 56.1 ¶¶ 43–44.

Accordingly, Lulo has not adduced evidence either that she was qualified for the post at OTG that she claims to have sought or that OTG's failure to hire her for that post occurred under circumstances giving rise to an inference of discrimination. Summary judgment is therefore warranted, too, on Lulo's claim of a retaliatory failure to rehire.

### B.    Supplemental Jurisdiction as to Lulo's NYSHRL and NYCHRL Claims

Before reaching Lulo's remaining claims, which assert violations of state or local law, the Court must determine whether to exercise supplemental jurisdiction over them.[3]

---

[3] Because OTG Management, LLC was recently substituted for OTG Management, Inc., and Lulo has not pled or adduced evidence the citizenship of the LLC's members, there is no basis on which to find diversity jurisdiction over Lulo's non-federal claims. Addressing those claims therefore requires the exercise of supplemental jurisdiction.

"Federal district courts have supplemental jurisdiction over state-law claims 'that are so related to claims in the action within [the courts'] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.'" *Martin v. Sprint United Mgmt. Co.*, No. 15 Civ. 5237 (PAE), 2017 WL 5028621, at *2 (S.D.N.Y. Oct. 31, 2017) (quoting 28 U.S.C. § 1367(a)); *see also Montefiore Med. Ctr. v. Teamsters Loc. 272*, 642 F.3d 321, 332 (2d Cir. 2011). "Furthermore, the federal claim and state claim must stem from the same 'common nucleus of operative fact,' such that the plaintiff 'would ordinarily be expected to try them all in one judicial proceeding.'" *Montefiore*, 642 F.3d at 332 (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)). Because the exercise of supplemental jurisdiction is discretionary, "a district court should balance the traditional 'values of judicial economy, convenience, fairness, and comity.'" *Mangum v. City of New York*, 15 Civ. 8810 (PAE), 2016 WL 4619104, at *9 (S.D.N.Y. Sept. 2, 2016) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).

Here, notwithstanding the entry of summary judgment in OTG's favor on Lulo's federal claims, the "values of judicial economy, convenience, fairness, and comity," *Cohill*, 484 U.S. at 350, clearly support the continued exercise of supplemental jurisdiction over Lulo's NYSHRL and NYCHRL claims so as to permit resolution of OTG's pending motion for summary judgment on these claims. The parties to all claims are the same; the factual record germane to all claims is the same and the Court is familiar with it by virtue of resolving Lulo's FMLA claims; and the standards of liability under the FMLA and the NYSHRL are identical. Although the NYCHRL has a more liberal standard, this Court's familiarity with the factual record makes it economical for the Court to resolve the NYCHRL claims notwithstanding the need to apply a different legal standard to them. And because cases under the NYCHRL are common in this

District, the Court is familiar with the governing standards. The *Cohill* factors thus favor

exercising supplemental jurisdiction to resolve Lulo's NYSHRL and NYCHRL claims.

### C.    Discrimination Claim Under the NYSHRL

OTG moves for summary judgment on Lulo's NYSHRL claim, based on her termination,

of pregnancy discrimination.

#### 1.    Legal Standards

Claims under the NYSHRL, like those under the FMLA, are analyzed under the

*McDonnell Douglas* burden-shifting framework discussed above. *See Fitchett v. City of New*

*York*, No. 18 Civ. 8144 (PAE), 2021 WL 964972, at *10 (S.D.N.Y. Mar. 15, 2021); *Tolbert v.*

*Smith*, 790 F.3d 427, 434 (2d Cir. 2015); *see also Summa v. Hofstra Univ.*, 708 F.3d 115, 125

(2d Cir. 2013). The applicable legal standards are, therefore, identical to those set forth in §

III.A.1, save the following modifications to the first and fourth elements of the *prima facie* case.

As to the first element, the protected characteristics are her sex and pregnancy. *See Farmer v.*

*Shake Shack Enters., LLC*, 473 F. Supp. 3d 309, 323 (S.D.N.Y. 2020); N.Y. Exec. Law §

296(1)(a) (it is "an unlawful discriminatory practice" for an employer, based on an individual's

gender or sex, "to discharge from employment . . . or to discriminate against such individual in

compensation or in terms, conditions or privileges of employment."); *id.* § 296(3)(a) (it "shall be

an unlawful discriminatory practice for an employer . . . to refuse to provide reasonable

accommodations to the known disabilities, or pregnancy-related conditions, of an employee[.]").

As to the fourth element, Lulo must demonstrate that the adverse action took place under

circumstances giving rise to the inference of *discriminatory* intent (as distinct from the

retaliatory intent required of her FMLA claim). *Benzinger v. Lukoil Pan Americas, LLC*, 447 F.

Supp. 3d 99, 117 (S.D.N.Y. 2020); *Farmer*, 473 F. Supp. 3d at 323.

### 2.    Application to Lulo's Claim of Discriminatory Termination

As with Lulo's FMLA claim, OTG disputes only the final element of her NYSHRL claim—that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent.

#### a.    Prima facie *case*

Lulo was terminated as part of the RIF in November 2017, four months after giving birth and one month after she returned to work.  She has not identified any other facts potentially relevant to a *prima facie* case of pregnancy discrimination.

On these spare facts, the passage of time between Lulo's pregnancy and her termination is insufficient to support an inference that her termination was an act of discrimination based on her pregnancy.  To be sure, a claim of pregnancy discrimination "does not require that the discrimination occur during the pregnancy." *Bond v. Sterling, Inc.*, 997 F. Supp. 306, 309 (N.D.N.Y. 1998); *Quaratino v. Tiffany & Co.*, 71 F.3d 58, 64 (2d Cir. 1995) (plaintiff was a member of the protected class where plaintiff was terminated less than four months after giving birth).  Rather, "[t]he time at which the plaintiff ceases being 'affected by pregnancy, childbirth, or related medical conditions' depends on the facts and circumstances of the particular case." *Briggs v. Women in Need, Inc.*, 819 F. Supp. 2d 119, 127 (E.D.N.Y. 2011) (quoting *Helmes v. S. Colonie Cent. Sch. Dist.*, 564 F. Supp. 2d 137, 147 (N.D.N.Y. 2008)).

However, a plaintiff who was not pregnant at or near the time of the adverse employment action must introduce evidence at the *prima facie* stage that she was still "affected by pregnancy" when she suffered the adverse employment action. *Helmes*, 564 F. Supp. 2d at 147.  Such evidence might consist of "evidence that harassment or discriminatory statements by plaintiff's supervisors began during her pregnancy or maternity leave and continued with some regularity until the adverse employment action occurred" or "evidence that she developed a medical

17

condition during pregnancy that continued to cause problems with her job until the adverse

employment action occurred." *Solomen v. Redwood Advisory Co.*, 183 F. Supp. 2d 748, 754

(E.D. Pa. 2002) (citations omitted). "Essentially, a plaintiff who was not pregnant at or near the

time she was terminated must demonstrate that the effects of her pregnancy continued to exist at

the time she was terminated, either in actual fact or in the thoughts and actions of those

responsible for firing her." *Id.*

Here, Lulo has not adduced any evidence along these lines—or any factual basis on

which to conclude that she continued to be "affected by pregnancy" as of the November 2017

RIF. She has not adduced evidence of harassment (before, during, or after her pregnancy),

references to her pregnancy, or that her diagnosis of postpartum depression affected her

conditions of employment, let alone her termination. Her claim of pregnancy discrimination

reduces to the fact that earlier in the year of her termination, she had been pregnant. Although

the standard for a *prima facie* case of discrimination is modest, *Quaratino*, 71 F.3d at 64, Lulo's

evidence is insufficient to support a *prima facie* case that her termination was an act of

discrimination based on her previously being pregnant, *see Rinsler v. Sony Pictures Ent.*, No. 02

Civ. 4096 (SAS), 2003 WL 22015434, at *6 (S.D.N.Y. Aug. 25, 2003) (finding no *prima facie*

case where relying solely on temporal proximity, and the termination occurred three months after

company found out about pregnancy); *Morrissey v. Symbol Techs., Inc.*, 910 F. Supp. 117, 122

(E.D.N.Y. 1996); *Stainkamp v. Changes Int'l of Fort Walton Beach, Inc.*, 373 F. Supp. 2d 163,

168 (E.D.N.Y. 2005); *LaBarbera v. NYU Winthrop Hosp.*, 527 F. Supp. 3d 275, 304 (E.D.N.Y.

2021), *appeal dismissed* (July 7, 2021).

> b. *OTG's legitimate, non-discriminatory reasons for termination and pretext*

Even assuming that Lulo's termination four months after her pregnancy made out a *prima facie* claim of pregnancy discrimination based temporal proximity, summary judgment would still be warranted for OTG on her NYSHRL claim of pregnancy discrimination. That is because, for the reasons reviewed above, OTG's has adduced evidence of a legitimate non-discriminatory reason for her termination (the RIF), and Lulo has not adduced any evidence of pretext. *See infra* § III.A.2.b. The only evidence that Lulo offers of her termination's discriminatory motivation besides temporal proximity is, again, Rodriguez's earlier termination after taking maternity leave as proof of pretext. But for the reasons reviewed above, Lulo's bare statement that "Ms. Rodriguez had been a pregnant woman who had taken FMLA leave right before she was terminated," Pl. 56.1 ¶ 69, does not give rise to inference that Rodriguez's termination was based on pregnancy discrimination, let alone that OTG's treatment of Rodriguez's is probative of its basis for terminating Lulo. And OTG has identified a legitimate non-discriminatory basis for terminating Rodriguez—the RIF terminating the employees hired as part of OTG's scuttled plan to go public. Def. Reply 56.1 ¶ 75.

Accordingly, OTG is entitled to summary judgment on this claim, too.

## D.   Retaliatory Failure to Rehire Claim Under the the NYSHRL

Lulo claims that OTG's failure to rehire was retaliatory, in violation of the NYSHRL.

A claim of retaliation under the NYSHRL is governed by the same *McDonnell Douglas* analysis as discrimination claims. But a plaintiff making such a claim must show participation in a protected *activity*, not merely that she has a protected characteristic. *See Milord-Francois v. New York State Off. of Medicaid Inspector Gen.*, No. 19 Civ. 179 (LJL), 2020 WL 5659438, at *16 (S.D.N.Y. Sept. 23, 2020); *Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 254 (2d Cir.

2014); *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 112 (2d Cir. 2019).  "The term 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination." *Farmer*, 473 F. Supp. 3d at 331 (quoting *Wright v. Monroe Cmty. Hosp.*, 493 F. App'x 233, 236 (2d Cir. 2012) (summary order).  Such evidence typically takes the form of a complaint—whether made formally or informally—or participation in a lawsuit challenging the alleged discrimination. *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 180 (2d Cir. 2005); *Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 363 (S.D.N.Y. 2012) (describing protected activity in a NYSHRL case involving a pregnant woman to include complaints, otherwise manifesting opposition to discrimination, and even merely "voicing concerns"); *see also Tang v. Glocap Search LLC*, No. 14 Civ. 1108 (JMF), 2015 WL 5472929, at *2 (S.D.N.Y. Sept. 16, 2015) ("There is no dispute that an employee's complaint about pregnancy discrimination—whether formal or informal—can constitute protected activity.").

The record here is devoid of evidence that Lulo ever made any complaint—informally or formally—about her sex or pregnancy status, or engaged in any type of protected activity, before filing this lawsuit in 2019.  And although filing a lawsuit can be a protected activity, *Dotson v. City of Syracuse*, 688 F. App'x 69, 73 (2d Cir. 2017) (summary order), Lulo does not allege that her application for rehire came after she filed this lawsuit, *see* Santos Decl., Ex. A at 86 (Lulo stating, "timing I don't remember," as to when she applied for the new post).  And it cannot logically be that Lulo's claims here is that she was retaliated against for filing this lawsuit.  That is because Lulo made her claim of retaliation in violation of the NYSHRL in her original Complaint in this case and has not since amended it.  *See* Dkt. 1.  There is, therefore, insufficient evidence on which to find a *prima facie* case of retaliation.

In any event, even assuming that Lulo had adduced evidence that OTG denied an application for rehire sufficiently soon after protected activity on her part to make out a *prima facie* case of a retaliatory refusal to rehire, summary judgment would still be required on this claim. That is because, as reviewed above, OTG has adduced unconverted evidence Lulo's old position no longer existed, and that she was not qualified for the one new position which she implies she sought—the CPA-level position filled by Mazur. *See infra*, § III.A.3.

### E.    Discrimination and Retaliation Under the NYCHRL

Defendants also move for summary judgment as to Lulo's claims under the NYCHRL that OTG discriminated and retaliated against her based on her earlier pregnancy.

As to discrimination, the standard to establish a *prima facie* case of discrimination under the NYCHRL is more relaxed than under the FMLA and the NYSHRL. A plaintiff must show that her employer treated her "less well, at least in part for a discriminatory reason." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 n.8 (2d Cir. 2013) ("[T]he *prima facie* case is satisfied if a member of a protected class was treated differently than a worker who was not a member of that protected class.") (citations and quotation marks omitted)). It is sufficient to show that the plaintiff "was treated differently from others in a way that was more than trivial, insubstantial, or petty." *Gorman v. Covidien, LLC*, 146 F. Supp. 3d 509, 530 (S.D.N.Y. 2015) (cleaned up). Nevertheless, summary judgment for the defense on a claim under the NYCHRL "is appropriate if the record establishes as a matter of law that discrimination . . . played no role in the defendant's actions." *Montgomery v. N.Y.C. Transit Auth.*, 806 F. App'x 27, 31 (2d Cir. 2020) (summary order).

Such is the case here. For the same reasons Lulo's NYSHRL pregnancy discrimination claim failed for lack of evidence that she was terminated based on her earlier pregnancy, her NYCHRL pregnancy claim fails too. The only evidence supporting those claims is that she had

been pregnant earlier in the year (2017) that she was terminated as part of the RIF, and that the prior year, a person (Rodriguez) who had earlier been pregnant was terminated as part of a RIF. Those facts would not permit a factfinder to find, other than by speculation, that discrimination played a role in the termination decision, let alone that Lulo had been treated less well than other employees on account of her prior pregnancy.

As to retaliation, under the NYCHRL, a plaintiff must allege that "she took an action opposing her employer's discrimination . . . and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Tang*, 2015 WL 1344788, at *5 (quoting *Mihalik*, 715 F.3d at 112); *see also* N.Y.C. Admin. Code § 8-107(7). The employer is liable "if [he] was motivated at least in part by an impermissible motive." *Id.* (alteration in original) (quoting *Brightman v. Prison Health Serv., Inc.*, 970 N.Y.S.2d 789, 792 (2013)). But, as with discrimination, summary judgment is appropriate if the record establishes as a matter of law that "played no role in the defendant's actions." *Montgomery*, 806 F. App'x at 31.

Such again is the case here. For the same reasons as Lulo's NYSHRL retaliation claim failed for lack of evidence of retaliatory motivation, her NYCHRL retaliation claim fails. She has not adduced evidence of any protected activity on her part predating OTG's failure to rehire her. Nor has she adduced evidence of a position at OTG after the RIF for which she was qualified.

Summary judgment is, therefore, merited for OTG on Lulo's NYCHRL discrimination and retaliation claims.

## CONCLUSION

For the foregoing reasons, the Court grants defendant's motion for summary judgment in its entirety. The Clerk of Court is respectfully directed to terminate the motion pending at docket 40 and to close this case.

SO ORDERED.

*Paul A. Engelmayer*

Paul A. Engelmayer
United States District Judge

Dated: February 10, 2022
New York, New York